ANDRES VIERA V. STATE.

No. 25480. November 21, 1951 (Opinion Withdrawn)
Rehearing Denied January 9, 1952.
Appellant's Second Motion for Rehearing Denied (Without Written Opinion) February 6, 1952.

Hon. Roy D. Jackson, Judge Presiding.

*Hubert T. Faulk* and *Albert Armendariz*, El Paso, for appellant.

*William E. Clayton*, District Attorney, and *Jack N. Fant*, Assistant District Attorney, El Paso, and *George P. Blackburn*, State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, twelve years.

The defect in the statement of facts has now been corrected, The original opinion is therefore withdrawn, and we proceed to consider the case on its merits.

All of the participants in this unfortunate tragedy were young men of Latin-American descent, who resided in the city of El Paso where the murder was committed.

Rodriguez, a juvenile, an accomplice to the crime, testified for the state. He recounted that on the night of the murder he and two of his companions heard that the "Missouri Street gang" were looking for them; and, upon receiving this information, they secured two 22-caliber rifles; loaded the same with some ammunition which he brought from his home; got a yellow and black pick-up truck, under the seat of which they placed the guns; and then proceeded around the neighborhood "looking for their friends." He further recounted that they found appellant and one Couder within the neighborhood; that they explained to them their mission; that he, appellant, and Couder got in the back of the pick-up; appellant and Couder each took a gun; and they proceeded to the Missouri Street Drug Store.

Rodriguez testified that, as they approached the drug store, he noticed some boys whom he did not recognize standing out in front; and, as they passed, appellant and Couder both fired one shot apiece, Couder toward the ground and appellant up in the air; he ducked down into the bed of the pick-up and heard three or four more shots being fired. According to the witness, the pick-up did not slacken its speed, and they proceeded on to the Morales home, where they disbanded. He stated that on the way from the scene of the shooting someone in the cab of the pick-up asked if they had hit someone, and Couder replied that he had. He further testified that he later heard that Raul Garcia had been killed and that he had never heard of Garcia, or any of the other boys with him whose identity he later learned, being members of any gang.

Rodriguez testified that later the same night he had been arrested and had made a statement to the police about the evening's activities.

A housewife in the neighborhood of the drug store testified that immediately before the shooting she saw a yellow pick-up truck pass her house with two or three men in the back; that the truck's lights had been turned off as it approached the drug store; and that after the shooting she went to the drug store and learned that Raul Garcia, a fine young man recently returned from the Navy, had been killed.

Two of Garcia's companions at the drug store testified that they lived in the neighborhood of the drug store, had never heard of a Missouri Street gang, and had been engaged in talking with Garcia about his impending return to the Navy when they heard what they thought were firecrackers. They testified further that when they realized that bullets were coming in their direction they sought cover, and that after a yellow motor vehicle had passed they discovered Garcia lying on the pavement with blood coming from his head.

A police officer testified that he recovered two 22-caliber rifles from the Morales home.

A ballistic expert from the El Paso police force testified that he had examined the bullet taken from Garcia's head during the course of the autopsy and that he was unable to determine from what rifle it had been fired.

The state introduced a portion of appellant's confession,

in which he outlined trouble he and "his friends" had had with a gang of boys living in the Missouri Street neighborhood, and told of the events of the evening up to and including where he and Couder started shooting.

The defendant introduced the remainder of the confession, in which appellant said that he fired twice, both times into the air and not at the boys, intending only to scare them.

We find the evidence to support the jury's verdict.

Bill of Exception No. 2 complains of the testimony of the accomplice as to the preparations made by the three boys in securing the guns prior to the time they picked up appellant and Couder. Appellant objected on the ground that he was not present when these preparations were being made.

In Sapp v. State, 87 Tex. Cr. R. 606, 223 S. W. 459, we had occasion to cite with approval Cox v. State, 8 Tex. App. 254. Therein we find a quotation from 1 Greenleaf on Evidence, in part, as follows:

"It makes no difference at what time any one entered into the conspiracy. Every one who does enter into a common purpose or design is generally deemed in law a party to every act which has before been done by the others, and to every act which may afterwards be done by any of the others, in furtherance of such common design."

Bill of Exception No. 3 complains that the ballistic expert who testified was not shown to have been qualified as such. With this, we cannot agree. The officer testified that he had been with the Identification Bureau of the Police Department of the city of El Paso for 23 years studying firearms and bullets.

Bills of Exception Nos. 4 and 5 complain of the refusal to give requested charges. We have examined them in the light of the statement of facts and have been unable to find the evidence which would warrant or require their being given.

Bill of Exception No. 6 complains of the opening argument of the prosecutor in which he said there had been a preliminary hearing, at which appellant was bound over to the grand jury, that the grand jury had indicted him, and that defendant was now being tried by the jury. The trial court qualified the bill by stating that defense counsel had brought out the fact that a

preliminary hearing had been held. Irrespective of the qualification, we see nothing "prejudicial or inflammatory" in the statement. Matters of common knowledge, unless they inject some new and harmful fact into the case, have never been held to be reversible error.

Bill of Exception No. 7 complains of the closing argument in which the prosecutor referred to gang warfare. Nowhere therein is it shown that an objection was made or that the court was requested to instruct the jury not to consider the same. We find no fundamental error therein.

Appellant's motion for rehearing is overruled, and the judgment of the trial court is affirmed.