

## NUMBER 13-06-076-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

BALDEMAR SAENZ, III,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## On appeal from the 377th District Court of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Wittig[1]
### Memorandum Opinion by Justice Wittig

Appellant, Baldemar Saenz, III, appeals his conviction by a Victoria County jury for

engaging in organized criminal activity. The underlying offense was capital murder.

Appellant was sentenced to life imprisonment. Notice of appeal was timely given.

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

Appellant raises ten issues which we address in order.  We affirm.

## 1.  Background

Several members of the La Raza Unida gang were driving around in Victoria, Texas December 5, 2003.  They spotted Michael Rodriguez.  They believed Rodriguez was related or a friend to a member of the rival gang, Hermanidad de Pistolerors Latinos, (HPL).  Some days before, on November 24, 2003, the HPL gang had attacked the home of Raza Unida member Robert Canchola, firing multiple shots into his home, killing his six-year-old son Robert Canchola, Jr.  Members of the Raza Unida gang plotted revenge.  The gang had decided that Rodriguez, an "innocent" like the Canchola boy, would be killed.  When Rodriguez was spotted on December 5, he got into the vehicle of one of the Raza Unida members, and then was driven around for hours.  He was taken to a field, shot multiple times, and left for dead.  Police found his body later.

## 2.  Change of Venue

In his first issue, appellant maintains the trial court erred by denying his motion to change venue.  In support of his motion, appellant introduced sixty-four exhibits consisting of fifty-six newspaper articles and eight video tapes.  Some of the newspaper articles begin shortly after the murder and include updates as various parties were set for trial.  Other articles published before the murder discussed the killing of the Canchola boy, and later articles reported trials of those accused of killing Canchola.  Some articles were apparent publicity interviews with the District Attorney, who discussed why he was seeking the death penalty in one of the related cases.  Otherwise, the evidence was typical newspaper reporting of criminal activity found almost daily in the newspapers of the state.  Appellant argues that the reporting of the murder of the six-year-old was followed by consistent and

2

frequent references to the death of the boy. Appellant claims there was a strong identifiable presence of prejudice caused by the coverage of this and similar cases. Appellant points to no evidence of prejudice other than the articles and tapes themselves. Neither does appellant argue any prejudice or predisposition of any of the venire.

Appellant states that the test to be applied in determining whether a trial court should grant a motion to change venue is whether the outside influences affecting the community climate of opinion as to a defendant are inherently suspect, citing *DeBlanc v. State*, 799 S.W.2d 701, 704-05 (Tex. Crim. App. 1990). We agree. More recently, the high court wrote that on appeal, the standard of review for this court is whether the trial court abused its discretion in refusing to grant the change of venue. *Renteria v. State*, 206 S.W.3d 689, 709 (Tex. Crim. App. 2006). The defendant seeking a change of venue bears a heavy burden to prove the existence of such prejudice in the community, that the likelihood of obtaining a fair and impartial trial jury is doubtful. *Id.* (citing *DeBlanc,* 799 S.W.2d at 704-705). Merely because a particular case is publicized in the media does not give rise to an automatic showing of prejudice; jurors do not have to be ignorant of the effects and issues of a particular case. *Id.* For a defendant to prevail in his motion to change venue, he must demonstrate that publicity about the case is pervasive, prejudicial and inflammatory. *Id.* A defendant must demonstrate an "actual, identifiable prejudice attributable to pretrial publicity on the part of the community from which members of the jury will come." *Id.*

Most of the newspaper articles are not about appellant. Many deal with Terry Michael Olesky, also charged with the murder of Rodriguez. Appellant's name appears

3

in some articles, typically in a straight forward factual reporting style. Only one article deals directly with appellant. The proof marshaled by appellant and argued in his brief simply does not add up to either the standard of "pervasive, prejudicial and inflammatory" or "actual identifiable prejudice attributable to pretrial publicity." *See id.*; *see also Ransom v. State*, 789 S.W.2d 572, 578-579 (Tex. Crim. App. 1989). Accordingly, the trial court did not abuse his discretion by denying the motion. Appellant's first issue is overruled.

### 3. Severance

Appellant next alleges the trial court abused his discretion by denying his motion to sever. The pre-trial motion was based upon the fact that appellant himself had a federal conviction initially thought to have been a felony. Defense counsel learned that the conviction was a misdemeanor and informed the State. The State then moved to rejoin appellant and co-defendant Jonathan Salazar, which the court granted. Appellant reurged his motion to sever and was denied. Because of a disagreement as to whether article 36.09 of the Texas Code of Criminal Procedure applied to misdemeanors, the State agreed not to offer appellant's prior misdemeanor conviction in the trial. No evidence was presented at trial concerning the prior misdemeanor conviction of appellant.

Severance is not a matter of right, but lies within the sound discretion of the trial court unless a joint trial would prejudice a co-defendant as a matter of law. *Garza v. State*, 622 S.W.2d 85, 91 (Tex. Crim. App. 1981)*; Smith v. State*, 998 S.W.2d 683, 686 (Tex. App.–Corpus Christi 1999, pet. ref'd). An appellant who challenges the denial of a motion for severance must satisfy the heavy burden of showing clear prejudice. *King v. State*, 17 S.W.3d 7, 16 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd); *Silva v. State*, 933 S.W.2d

4

715, 719 (Tex. App.–San Antonio 1996, no pet.).

A showing of clear prejudice based on an allegation that the co-defendants' defenses are inconsistent is apparently established if the co-defendants' respective positions are mutually exclusive to the extent that "the jury in order to believe the core of one defense must necessarily disbelieve the core of the other." *Aguilar v. State*, 39 S.W.3d 700, 702 (Tex. App.–Corpus Christi 2001, pet ref'd.). Article 36.09 of the code of criminal procedure provides, in relevant part:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX. CODE CRIM. PROC. art. 36.09 (Vernon 2005).

This code provision is discussed in *Qualley*, where the court reiterates that where evidence shows that there is a previous admissible conviction against one defendant, or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants. *Qualley v. State,* 206 S.W.3d 624, 637 (Tex. Crim. App. 2006). The "previous admissible conviction" portion of the statute acts only to shield a defendant from the introduction of the co-defendant's conviction. *Id.* The concept is that a defendant without a conviction may suffer "guilt by association" from the jury's exposure to the co-defendant's previous crime. *Id.* A severance on this basis is mandatory only when the moving defendant himself has

5

no prior conviction that would be admissible at either the guilt or punishment stage of trial. *Id.* Even when the requisite circumstances are present, failure to grant a severance on this basis is harmless if the co-defendant's previous conviction was not in fact admitted at trial as was the case here. *Id.* Thus, appellant was not entitled to a severance on the stated basis of a previous admissible conviction because the prejudice, if any, would be to his co-defendant, not to himself. *See id.*

Appellant also complains that during the trial, evidence was introduced that co-defendant Salazar committed the offense of deadly conduct. First, there was no showing that Salazar was convicted. Thus, the mandatory language of article 36.09 has no application. TEX. CODE CRIM. PROC. art. 36.09. Appellant also argues that the admission of a drive-by shooting by Salazar constitutes prejudice to himself because he was shown to be connected to the same or similar acts. He further argues that evidence that Salazar had a motive to commit murder, when there was no such evidence presented against appellant, preventing him from having a fair trial. No such objections concerning motive or connection to appellant were made to the trial court and are thus waived. TEX. R. APP. P. 33.1(a)(1). The only material objection was a reiteration of prior objections based upon the premise of a conviction by a co-defendant.

To establish prejudice, the defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction. *Qualley*, 206 S.W.3d at 636. The witness Chris Adams was called by the State and identified appellant, Salazar, and other members of the Raza Unida gang. He explained that one

6

of the principal activities of the gang was selling drugs.  He further described how the gangs divided territories and the HPL murder of Canchola.  He testified that several gang members met at his house to discuss what to do about the murder of the boy.  The gang decided to do acts of violence for retribution against HPL.  When asked what overt acts that Adams did, he responded that one time he drove "while HPL shot."[2]  Another time he was a passenger with Olesky and Salazar, and Salazar shot.  The witness went on to describe his actions of retaliation against HPL.  These particular acts were not attributed to appellant.  It is difficult to conceive how any trial involving gang conduct would not necessarily mention some gang conduct that may not directly include one certain gang members on one particular occasion.  Here, the record does not demonstrate that some specific trial right was compromised or that the jury was prevented from making a reliable judgment.  While curative instructions, if needed, were available to appellant, none were requested.  We overrule this issue.

### 4. Voir Dire:  Commitment

In his third issue, appellant argues that the trial court erroneously overruled his objection to the improper use of a "commitment question."  The question asked:

> So, do you think a gang would have like a list or rules or a constitution?
> Maybe they have to vote on things and have membership and leadership
> and those kinds of things?  Is that what you would expect out of organized -
> -

In context, it was the prospective juror who first stated that one of the obligations of a gang member was loyalty.  The juror also introduced the idea of a constitution.  "Those guys in

---

[2]  This is an apparent misstatement by either the witness or the court reporter.  It is not likely the an HPL member was in a Raza Unida vehicle, much less shooting at one of his own gang  members.

a gang have a Constitution that they're dying for. It's an ideal they're following." The State then followed up with the objected to question quoted above.

Appellant cites *Standefer* for the proposition that certain commitment questions, often requiring a "yes" or "no" answer, are improper. *See Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. *Id.* Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Id.* "The inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts--and only those facts-- that lead to a valid challenge for cause?" *Id.* If the answer to (1) is "yes" and the answer to (2) is "no," then the question is an improper commitment question, and the trial court should not allow the question. *Id.*

The trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Therefore, we should not disturb a trial court's ruling on the propriety of a particular question during voir dire absent an abuse of discretion. *Id.* Questions, for example, regarding a juror's attitude about "tort reform" or "the lawsuit crisis" are not commitment questions because they do not ask for a commitment to resolve or refrain from resolving an issue in the case a certain way after learning a particular fact. *Standefer,* 59 S.W.3d at 183 (citing *Babcock v. Northwest Memorial Hospital,* 767 S.W.2d 705, 706 (Tex. 1989)). Here, the record shows that the State was asking a series of questions attempting to discover prospective jurors attitudes towards gangs and how they operated. There was no attempt to commit this juror because

8

he had already stated he thought that gangs had constitutions (or rules).  The questioning was simply an amplification of the juror's view.  Accordingly, we hold that the question, in this context, does not meet the first prong of *Slandefer*.  *Id.* at 177.  Therefore, the trial court did not abuse its discretion.

Even if we assume error, the record does not show any harm.  TEX. R. APP. P. 44.2 (b).  The question was not answered, rewarding appellant by stopping this line of questioning.  The record does not disclose whether the prospective juror was chosen.  The error, if any, was not emphasized, and there is no evidence it was given any weight.  *See Wilson v. State*, 939 S.W.2d 57, 61 (Tex. Crim. App. 1996).  We overrule this issue.

### 5. Relevancy of Evidence

Next, appellant challenges the relevancy of photos of gang members, the location of a rival gang member's home, photographic evidence of gang tattoos of a rival gang and evidence of a murder committed by the rival gang.  He also claims prejudice.  Appellant cites *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) ("Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis--a pertinent hypothesis being one which, if sustained would logically influence the issue.  Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue more or less probable.") (citing *Waldrop v. State*, 133 S.W.2d 969 (Tex. Crim. App. 1940).  He next cites *Medina v. State*, 7 S.W.3d 633, 644 (Tex. Crim. App. 1999).  In *Medina*, the State's theory of the offense was that appellant opened fire into a group gathered in front of a home in revenge for the murder of a fellow gang member.  *Id.*  Witnesses testified that at the time of the offense the H-town Crips and La Raza were at odds.  *Id.*  Thus, in

9

context, the testimony was most relevant as to appellant's motive and intent on the night of the offense. *Id.* Similarly, appellant cites *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996) (same transaction contextual evidence is admissible under rule 404(b) "only to the extent that it is necessary to the jury's understanding of the offense." Such evidence is admissible only "when the offense would make little or no sense without also bringing in the same transaction evidence." *Id.*

We review the trial court's admission or exclusion of evidence by an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court's decision will be reversed only if it was "outside the zone of reasonable disagreement." *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992); *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g). Rule 403 provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

The State was required to prove that appellant acted with intent to establish, maintain, or participate in a combination or in profits of a combination or as a member of a criminal street gang. TEX. PENAL CODE ANN. § 71.02(a) (Engaging in Organized Criminal Activity). Section 71.02(a)(1) enumerates murder and kidnapping as two of the crimes listed as offenses thereunder. *See id.* The murder of the Canchola child was part of the motivation for retribution by appellant and the Raza Unida gang. Meetings to discuss the revenge helped to prove the motive and provided evidence of appellant's membership in

10

the gang and participation in the retribution crime. The ability of appellant's gang to conduct their drug trafficking would have been adversely affected by the HLP intrusion into their territory. Photos of the various gang members help to prove the combination and motivation for the murder. The trial court could reasonably have concluded the evidence to be both relevant, necessary to the jury's understanding of the offense, and not unduly prejudicial. Thus, the admission of this evidence was not an abuse of desertion. We overrule this issue.

### 6. Speculative Testimony

Next, appellant asserts the trial court erred by admitting speculative testimony of Chris Adams. Adams was asked whether it appeared that the victim Rodriguez could have gotten up and left freely and voluntarily prior to the murder. The State presumably sought to prove up the kidnapping element of the offense. Appellant objected on the basis of evidence rule 602. TEX. R. EVID. 602. Appellant contends Adams lacked sufficient personal knowledge to testify to this "fact."

Adams testified that Rodriguez could not leave. Adams previously testified that Rosales and Salazar were in the car, seated on either side of Rodriguez in the back seat. Both were armed. Further, Olesky was quoted as stating: "We've got one of them ho'e's and we're going to kill him." Adams saw Salazar and Rosales nod, confirming Olesky's statement. Later that evening, appellant returned with Olesky, Rosales, Salazar and the victim. The captors were standing around the car armed with pistols, while Rodriguez remained in the middle rear seat. Adams had already testified that it was his impression Rodriguez would not make it home alive. Then followed the objection to the question whether it appeared to Adams that Rodriguez could have gotten up and walked away.

11

We review the trial court's admission or exclusion of evidence by an abuse of discretion standard. *Weatherred,* 15 S.W.3d at 542. Rule 602 provides in relevant part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness." TEX. R. EVID. 602; *see also Wright v. State*, 178 S.W.3d 905, 918 (Tex. App.– Houston [14th Dist.] 2005, pet. denied). Adams was qualified to testify that Rodriguez could not leave because he had personal knowledge of a number of key facts, and he was present at material times. *Id.* Furthermore, a witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations. *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). This also incorporates the personal knowledge requirement of rule 602 requiring that a witness may not testify to a matter unless he or she has personal knowledge of the matter. *Id.* (citing *Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App.1994)). Accordingly, the trial court did not abuse its discretion by allowing the testimony. We overrule this issue.

## 7. Leading Questions

Appellant argues the State improperly used leading questions of Adams and Rosales. Specifically, Adams was asked whether there was an ongoing criminal operation to sell drugs on Brazos Street. Rosales was asked if he, appellant, and others took Rodriguez somewhere on Fox Road against his will and killed him. The objection to "leading" was overruled. The State asked the witness to point to Salazar and to confirm that was he. Here appellant's objection of leading was sustained. After Rosales indicated

12

that he was handed a gun, the State asked if that was the .22 that was in his pocket. Again, appellant's objection to leading was sustained. Later, the State asked if the group said anything about "hard luck," referring to Rodriguez. Again, appellant's objection was sustained. Finally, the State asked if any comments were made by appellant or Salazar about Rodriguez being in the wrong place at the wrong time. Counsel for both defendants objected and the trial court once again sustained the objections. Only one of the complained of objections to a leading question accompanied by proper record cites was overruled. Thus, clearly there was no abuse of discretion by the trial court to four of the five Rosales-leading-question complaints on appeal. *Weatherred,* 15 S.W.3d at 542 (trial court's admission or exclusion of evidence by an abuse of discretion standard).

A leading question suggests an answer; if a question does not suggest an answer it is not leading. *See* TEX. R. EVID. 611; *Bellew v. State*, 452 S.W.2d 460, 461 (Tex. Crim. App. 1970). What answer was the State suggesting to the witness Rosales, that he did kill Rodriguez or that he did not? Essentially, the State was asking "Did you do it?" We do not find the question to be leading. Even if it were, it did not affect a substantial right of appellant and was thus harmless. TEX. R. APP. P. 44.2(b).[3]

Regarding the questioning of Adams, (whether there was an ongoing criminal operation to sell drugs), appellant provides no proper citation to the voluminous record. Accordingly, the error, if any, is waived. TEX. R. APP. P. 38.1(h); *see Tufele v. State*, 130 S.W.3d 267, 271 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (appellant has a duty to cite specific legal authority and to provide legal argument based upon that authority).

---

[3] See our harmless error discussion below.

Even if we were to assume error regarding either the Adams or Rosales question, rule 44.2(b) mandates that we disregard any non-constitutional error unless it affects appellant's substantial rights. TEX. R. APP. P. 44.2(b). An error in the admission or exclusion of evidence is subject to the harm analysis set forth in rule 44.2(b). *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Dorado v. State*, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992)). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). If other properly admitted evidence proves the same facts, the error is harmless. *See Matz v. State*, 21 S.W.3d 911, 912 (Tex. Crim. App. 2000); *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Additionally, "we should not reverse a conviction for the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Cobb v. State*, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002) (quoting *Johnson*, 967 S.W.2d at 417). The record is replete with other references to sales of drugs by both Raza Unida and HPL. Our review of the record shows that the single question to Adams and Rosales and their answers had little effect or influence in determining the jury's verdict. We overrule this issue.

### 8. Hearsay Evidence

In his seventh and eighth issues, appellant complains the State presented hearsay evidence on a number of occasions. Olesky was quoted as saying "we've got one of those ho'e's cousins in the car and we're fixing to kill him." No objection was offered by

14

trial counsel. This sub-issue was waived. TEX. R. APP. P. 33.1(a)(1)(A).

Appellant complains of statements made by appellant, Olesky, and Salazar as related by Adams: "that dam– your primo just started shooting. It just started going off." Again no objection was offered by trial counsel, possibly because he did not want to draw attention to, or draw out, the death scene where Olesky told Rodriguez to say his prayers; Rodriguez made the sign of the cross. This sub-issue is waived. *Id.*

Appellant also complains about Adams' testimony relating appellant's "talking about it and how, once he hit the ground, they started shooting him. . . ." Similarly, Adams testified, "Once he hit the ground everybody started firing." Then, Adams recounted that they said his head kind of went back and he fell to the ground. Adams further stated his "ex-sister" (a "crack friend") was threatened by Olesky that if she said anything, she would be killed. Appellant points to no objections to any of the above testimony, made to the trial court, prior to their admission.[4] Nor does our review reveal timely objections. These sub-issues were waived. *Id.*; TEX. R. EVID. 103(a)(1).

Appellant next complains that the witness Deases was allowed to testify to a remark by Olesky about "Some guy he called a 'Mobster.'" No timely objection was made to the trial court. The sub-issue is waived. TEX. R. APP. P. 33.1(a)(1)(A).

Appellant also complains that the witness Rosales was allowed to testify regarding alleged gang membership by the victim Rodriguez. Trial counsel timely objected to the

---

[4] Appellant cites to R.R. vol 11 73:9. This was after the admission of the above statements. The trial court discussed one rendition of the statement by Olesky after the murder, in the mobile home with the named defendants not present (waiting outside in the car). The trial judge then summarized the co-conspirator rule and ruled this Olesky statement admissible. If appellant is suggesting this later ruling applied to the earlier Adams statement that his ex sister would be killed if she said anything, then the objection was not timely. TEX. R. EVID. 103)(a)(1). TEX. R. APP. P. 38.1(g).

15

hearsay within hearsay. The State's attorney responded that the matter was not offered for the truth of the matter stated. Much other testimony indicated Rodriguez was not a gang member. Assuming error, we cannot discern how any substantial right of the appellant was abused. TEX. R. APP. P. 44.2(b). We find that the error, if any, did not have a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271.

In a related issue, appellant complains the trial court erred by allowing Jody Deases to testify that Olesky said there was a "Pistolero" that wanted to kill him. Olesky was also quoted as telling Deases that they should say nothing or else he, Olesky, would "take care of them." According to appellant, the trial court allowed this statement as a statement against interest under rule 803 (24). TEX. R. EVID. 803 (24). As we discuss below, these statements are not hearsay.

Most of the statements above and specifically including the Deases testimony, were admissible as non-hearsay, according to the hearsay rule. TEX R. EVID. 801(e)(2)(E) (statement by a co-conspirator of a party during the course and furtherance of the conspiracy is not hearsay). When two or more people take part in the commission of a felony, evidence of a conspiracy is admissible even though the substantive crime of conspiracy is not charged. *Meador v. State*, 812 S.W.2d 330, 332 (Tex. Crim. App. 1991). A conspiracy exists where two or more persons, as shown by words or deed, agree to do an unlawful act. *Butler v. State*, 758 S.W.2d 856, 860 (Tex. App.--Houston [14th Dist.] 1988, no pet.). Statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators. *Crum v. State*, 946 S.W.2d 349, 363 (Tex. App.--

16

Houston [14th Dist.] 1997, pet ref'd.)

The State also argues, and we agree, that it makes no difference at what time any one such as appellant entered into the conspiracy. *Viera v. State*, 156 Tex. Crim. 631, 634 (Tex. Crim. App. 1951). "Every one who does enter into a common purpose or design is generally deemed in law a party to every act which has before been done by the others, and to every act which may afterwards be done by any of the others, in furtherance of such common design." *Id.* (quoting 1 Greenleaf on Evidence). We overrule these issues.

## 9. Extraneous Acts

Appellant next argues that the testimony by Rodriguez's sister that her house had been shot after the murder was admitted without proper notice under evidence rule 404b. Tᴇx. R. Evɪᴅ. 404(b). Appellant contends he timely requested notification of the State's intent to introduce evidence of other crimes, wrongs or acts unless arising from the same transaction. The drive by shooting was by Olesky. He was accompanied by Rosales, DeLeon and Salazar. Counsel for appellant established on cross-examination who was arrested. Appellant was not arrested in the white car involved in the drive-by shooting. Rule 404(b) refers to evidence of other crimes being inadmissable to prove the character of a person in order to show action in conformity therewith. *Id.* Rule 404(a) states evidence of a person's character is not admissible to prove action in conformity therewith, with certain exceptions. Tᴇx .R. Evɪᴅ. 404(a). Here the State provided the required notice to Salazar. And, it was Salazar, Rosales, DeLeon and Olesky that were involved in these "other crimes," not appellant. On the other hand, it could be argued that this evidence shows an organized crime combination in furtherance of the conspiracy to murder Rodriguez, which then would apply to appellant.

17

Same transaction contextual evidence may be admissible where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony. . . of any one of them cannot be given without showing the others." *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). It has also been held that "it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986).

The appellant suggests that the State's open file policy is not sufficient notice. In *Hayden*, the court of criminal appeals noted that in some situations an open file policy is not sufficient to comply with the rule. *Hayden v. State*, 66 S.W.3d 269, 271 (Tex. Crim. App. 2001). On the other hand, because the purpose of rule 404(b) notice is to prevent surprise, the delivery to the defense of witness statements detailing extraneous offenses may, in an appropriate case, satisfy the notice requirements of rule 404(b). *Id.* at 272. The rule requires "reasonable" notice. *Id.* Whether the delivery of witness statements constitutes reasonable notice depends in part on the timing of that delivery. *Id.* Neither party addresses *Hayden* and its ramifications.

The State points out that it notified appellant in response to his request and its notice begins: "Member of the prison gang Raza Unida- history [sic] of assaults, homicides, drug trafficking, intimidation, and other gang related criminal activities." It lists Sgt. John Garza, VCSO, as this source. However, the record does not include a statement by Garza. The State also argues that appellant had to know that he was indicted for an organized crime offense and thus had to know this evidence would be offered.

18

Finally, the State contends that the evidence of the subsequent drive-by shooting and arrest of Olesky was "same transaction" evidence and a necessary part of its proof. This is true because Olesky was arrested with a .38 caliber pistol, which was tied to the murder of Rodriguez. Projectiles matching the Olesky pistol were found in the body of Rodriguez. Thus, the evidence added to the proof of the organized crime combination, and also corroborated the accomplice witness testimony of Rosales. We agree. Here, several crimes were intermixed, or connected so that they formed an indivisible criminal transaction. *See Rogers*, 853 S.W.2d at 33. The drive-by was attempted intimidation of a potential witness and the arrest led to the discovery of one of the weapons used in the murder. Thus, the full proof by testimony of the organized crime combination could not be given without showing this transaction. Id. Rule 404(b) excludes same transaction evidence from its notice requirements in criminal cases. TEX. R. EVID. 404(b). We overrule this issue.

## 10. Evidentiary Sufficiency

In his last issue, appellant contends the evidence is legally and factually insufficient to prove the elements of capital murder beyond a reasonable doubt. Specifically, he complains the State did not prove that the murder occurred in an attempt to commit, or during the commission of, kidnapping. Nor did the State prove, according to appellant, that he was a member of the combination at the time of the offense and that he either directly committed or assisted in the murder of the victim.

In reviewing legal sufficiency, the courts look at all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vasquez v. State*,

19

67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Legally sufficient evidence supporting a conviction exists if the court, after reviewing the evidence in the light most favorable to the prosecution, determines that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

In determining the factual sufficiency of the elements of an offense, the reviewing court "'views all the evidence . . . in a neutral light, and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.'" *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (quoting *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact. *Id.* We are authorized to disagree with the fact finder's determination. *Id.* (citing *Clewis*, 922 S.W.2d at 133). This review, however, must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense, asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson*, 23 S.W.3d at 11.

"A person commits the offense of kidnapping when he knowingly or intentionally abducts another person." TEX. PENAL CODE ANN. § 20.03(a) (Vernon 2005). "Abduct" means "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." *Id.* § 20.01(2)(5). Because the verdict was supported in part by the accomplice testimony of Rosales, we must also determine whether other non-accomplice evidence tends to connect appellant with the offense. *See McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (citing TEX. CODE CRIM. PROC. art. 38.14).

Most of the witnesses were not accomplices to the murder. This includes the testimony of Hensley, Deases, Garcia, deputies, policemen, and Adams. While Adams was found by the trial court to be an accomplice in fact, the jury was charged to determine his status. Even without the testimony of Adams or Rosales, the evidence favoring the conviction was considerable and corroborative.

The evidence showed that Raza Unida gang members Salazar, Rosales, Olesky, Shorty, and appellant met at Hensley's home shortly after the Canchola boy's killing. Guns were present. Appellant was seen with a weapon on the day of the murder. Olesky was arrested with a pistol used to shoot Rodriguez. Deases pleaded with Olesky not to kill Rodriguez, who responded "what's got to be done's got to be done." Deases testified that Rodriguez was a cousin of one of the HPL members, and they were going to kill him. Hensley was threatened by a gang member that she would be killed if she spoke of the Raza Unida meetings. Garcia testified that Rodriguez was picked up by Olesky, Salazar, and Rosales. Several deputies and officers testified that appellant and the others were members of Raza Unida.

21

Adams was not a gang member. Several witnesses placed Rodriguez in the rear middle seat of the automobile. Weapons were present. Salazar and Rosales at one point were standing outside on either side of the car with weapons visible. When Olesky said they were going to kill Rodriguez, Salazar and Rosales acknowledged their mutual intent. Adams saw appellant in the vehicle with Rodriguez shortly before the killing and testified that appellant sat next to Rodriguez with a pistol. Olesky, Salazar, Rosales, and appellant returned to the house and asked for some marijuana. Olesky wanted to get Rodriguez high before killing him. Some time later, the four returned without Rodriguez. Appellant and Salazar talked about all of them shooting the victim and leaving him twitching out on Fox Road. The clothing of the four was collected along with the weapons and put in a black trash bag, which was placed in the back of Olesky's vehicle.

The body of Rodriguez was found by law enforcement riddled by pistol fire. Thus, sufficient evidence corroborated the eyewitness testimony of the accomplice Rosales. Rosales in turn testified. He verified much of the other evidence and indicated the group took Rodriguez out of the car near Fox Road. He reconfirmed appellant's membership in Raza Unida. Olesky fired the first shot with a .38 pistol. Before he was shot, Rodriguez told Olesky to "go to hell." Then Olesky shot him in the head. Rodriguez stood shaking for a couple of seconds, then appellant and Salazar shot Rodriguez. The group shot him 12 or 13 times, some emptying their weapons into Rodriguez. Then Rosales also fired one shot.

Appellant argues that a rational trier of fact could not have found the elements of kidnapping beyond a reasonable doubt. He further argues the State failed to prove that restraint of Rodriguez was completed and lack of specific intent to prevent liberation by

secretion or deadly force. He cites *Mason v. State*, 905 S.W.2d 570, 575 (Tex. Crim. App. 1995). *Mason* holds that a kidnapping becomes a completed offense when a restraint is accomplished, and there is evidence that the actor intended to prevent liberation and that he intended to do so by either secretion or the use or threatened use of deadly force. *Id.* Thus, the State had the burden to prove that a restraint was completed and that appellant evidenced a specific intent to prevent liberation by either secretion or deadly force. *Id.*

As we discussed above, Adams testified that Rodriguez could not leave. Adams previously testified that Rosales and Salazar were at the car, seated on either side of Rodriguez in the back seat. Both were armed, and Olesky stated "we're going to kill him." Adams saw Salazar and Rosales nod, confirming Olesky's statement. Later that evening, the captors were standing around the car armed with pistols, while Rodriguez remained in the middle rear seat. Adams had already testified that it was his impression Rodriguez would not make it home alive.

The State argues that there is nothing in the Texas statute that even suggests that it is necessary for the State to prove that a defendant moved his victim a certain distance, or that he held him a specific length of time before he can be found guilty of kidnapping citing, *Hines v. State*, 75 S.W.3d 444, 447-48 (Tex. Crim. App. 2002). *Hines* also holds that under the kidnapping statute, there is no specific time requirement for determining whether a restraint has taken place. *Id.* (citing *Santellan v. State*, 939 S.W.2d 155, 163 (Tex. Crim. App. 1997); *Earhart v. State*, 823 S.W.2d 607, 618 (Tex. Crim. App. 1991), remanded on other grounds, 509 U.S. 917 (1993); *Rogers v. State*, 687 S.W.2d 337, 342 (Tex. Crim. App. 1985); *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980)).

The term "abduct" means to restrain a person with intent to prevent his liberation by

secreting or holding him in a place where he is not likely to be found. TEX. PENAL CODE ANN. § 20.01(2)(A). This definition does not require that the victim be held for any certain length of time. *Sanders,* 605 S.W.2d at 614. In this case, there is ample evidence to show that for some time the appellant and fellow gang members intentionally and knowingly restrained the victim with the intent to prevent his liberation by secreting and holding him in a place where he was not likely to be found. *See id.* The jury could reasonably conclude that the victim was in fact held in an automobile being driven around by armed assassins, then secreted to a deserted country road, and was not found until hours after his murder. Thus, there is legally sufficient evidence to support the findings of kidnapping and murder.

Appellant argues that while Adams indicated that Rodriguez was held by gang members with weapons, he also told an investigator Rodriguez was not kidnapped. At one point, Rosales testified Rodriguez was not being held in the car at gun point, at least not until they arrived at Fox Road. There was equivocal testimony about Rodriguez's entry into the car. However, earlier testimony indicated that it was gang members that "spotted" Rodriguez walking from an HPL house before they picked him up. Many questions were aimed at showing that "at that point" there was no weapon aimed at Rodriguez. Yet ultimately, all guns were aimed at Rodriguez and fired. Other evidence showed the group drove Rodriguez around and even bought cokes and chips. Finally, appellant hypothesizes that the murder occurred as a spur-of-the-moment impulse killing.

Intent to prevent liberation by secretion or deadly force can be inferred from an accused's conduct, remarks, and the surrounding circumstances. *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980); *Murchison v. State*, 93 S.W.3d 239, 254 (Tex. App.– Houston [14th Dist.] 2002, pet. ref'd). We note that gang-member Olesky expressed

24

the intent to kill an innocent like the Canchola baby. The Raza Unida gang was angry over the Canchola murder and sought revenge. They also expressed a need to protect their drug trafficking turf. Even if Rodriguez initially voluntarily entered the gang member's car, he was driven around for hours then taken to a remote rural location. His "hosts" were all armed, and intent upon killing Rodriguez, who remained seated between two gang members. The penal code does not require that the victim be held for any certain length of time. TEX. PENAL CODE ANN. § 20.01(2)(A); *Sanders*, 605 S.W.2d at 614. At least during his final hour of his life, Rodriguez was taken from his neighborhood, surrounded by gang members, driven to a remote location, shot multiple times, and left for dead. Even had Rodriguez's initial entry into the vehicle been voluntary, his last ride to the countryside where he was murdered was not voluntary. Thus, the necessary intent to prevent liberation is established. Viewing all of the evidence in a neutral light, we cannot say that the evidence is so weak that the verdict is clearly wrong and manifestly unjust or the verdict is against the great weight and preponderance of the evidence. *Johnson*, 23 S.W.3d at 10-11. We have also carefully reviewed the most important evidence that appellant claims undermines the verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). That evidence does not demonstrate that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination. *Johnson*, 23 S.W.3d at 11.

Finally, appellant submits there was insufficient evidence demonstrating that he was a member of a combination or criminal gang before and during the offense. He admits there was evidence he had the gang tattoo, but insists he was not a major player in the gang activities such as drive-by shootings and drug dealing. Deputies Smejcal and Garza, as well as Officer Garcia, testified appellant was a member of Raza Unida. Other

25

witnesses also identified appellant as a member of the gang. He was present at one of the homes when material gang activities were discussed. Before the murder, appellant was seen armed outside the vehicle that took Rodriguez to the scene of his death. Appellant was present when the gang went to the house to get marijuana, shortly before the murder. Appellant was present at the murder and fired shots into Rodriguez. He admitted shooting Rodriguez after the murder. Thus, the evidence does not demonstrate that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination,. *Id.* We overrule this issue.

## 11.  Conclusion

The judgment and sentence of the trial court are affirmed.


DON WITTIG,
Justice


Do not publish.  TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 2nd day of April, 2009.