NUMBER 13-06-076-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


BALDEMAR SAENZ, III, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 




On appeal from the 377th District Court of Victoria County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Wittig (1)


Memorandum Opinion by Justice Wittig


 

 Appellant, Baldemar Saenz, III, appeals his conviction by a Victoria County jury for
engaging in organized criminal activity. The underlying offense was capital murder. 
Appellant was sentenced to life imprisonment. Notice of appeal was timely given. 
Appellant raises ten issues which we address in order. We affirm.

 1. Background

 Several members of the La Raza Unida gang were driving around in Victoria, Texas
December 5, 2003. They spotted Michael Rodriguez. They believed Rodriguez was
related or a friend to a member of the rival gang, Hermanidad de Pistolerors Latinos,
(HPL). Some days before, on November 24, 2003, the HPL gang had attacked the home
of Raza Unida member Robert Canchola, firing multiple shots into his home, killing his six-
year-old son Robert Canchola, Jr. Members of the Raza Unida gang plotted revenge. The
gang had decided that Rodriguez, an "innocent" like the Canchola boy, would be killed. 
When Rodriguez was spotted on December 5, he got into the vehicle of one of the Raza
Unida members, and then was driven around for hours. He was taken to a field, shot
multiple times, and left for dead. Police found his body later.

 2. Change of Venue

 In his first issue, appellant maintains the trial court erred by denying his motion to
change venue. In support of his motion, appellant introduced sixty-four exhibits consisting
of fifty-six newspaper articles and eight video tapes. Some of the newspaper articles begin
shortly after the murder and include updates as various parties were set for trial. Other
articles published before the murder discussed the killing of the Canchola boy, and later
articles reported trials of those accused of killing Canchola. Some articles were apparent
publicity interviews with the District Attorney, who discussed why he was seeking the death
penalty in one of the related cases. Otherwise, the evidence was typical newspaper
reporting of criminal activity found almost daily in the newspapers of the state. Appellant
argues that the reporting of the murder of the six-year-old was followed by consistent and
frequent references to the death of the boy. Appellant claims there was a strong
identifiable presence of prejudice caused by the coverage of this and similar cases. 
Appellant points to no evidence of prejudice other than the articles and tapes themselves. 
Neither does appellant argue any prejudice or predisposition of any of the venire.

 Appellant states that the test to be applied in determining whether a trial court
should grant a motion to change venue is whether the outside influences affecting the
community climate of opinion as to a defendant are inherently suspect, citing DeBlanc v.
State, 799 S.W.2d 701, 704-05 (Tex. Crim. App. 1990). We agree. More recently, the
high court wrote that on appeal, the standard of review for this court is whether the trial
court abused its discretion in refusing to grant the change of venue. Renteria v. State, 206
S.W.3d 689, 709 (Tex. Crim. App. 2006). The defendant seeking a change of venue bears
a heavy burden to prove the existence of such prejudice in the community, that the
likelihood of obtaining a fair and impartial trial jury is doubtful. Id. (citing DeBlanc, 799
S.W.2d at 704-705). Merely because a particular case is publicized in the media does not
give rise to an automatic showing of prejudice; jurors do not have to be ignorant of the
effects and issues of a particular case. Id. For a defendant to prevail in his motion to
change venue, he must demonstrate that publicity about the case is pervasive, prejudicial
and inflammatory. Id. A defendant must demonstrate an "actual, identifiable prejudice
attributable to pretrial publicity on the part of the community from which members of the
jury will come." Id. 

 Most of the newspaper articles are not about appellant. Many deal with Terry
Michael Olesky, also charged with the murder of Rodriguez. Appellant's name appears
in some articles, typically in a straight forward factual reporting style. Only one article deals
directly with appellant. The proof marshaled by appellant and argued in his brief simply
does not add up to either the standard of "pervasive, prejudicial and inflammatory" or
"actual identifiable prejudice attributable to pretrial publicity." See id.; see also Ransom
v. State, 789 S.W.2d 572, 578-579 (Tex. Crim. App. 1989). Accordingly, the trial court
did not abuse his discretion by denying the motion. Appellant's first issue is overruled.

 3. Severance

 Appellant next alleges the trial court abused his discretion by denying his motion to
sever. The pre-trial motion was based upon the fact that appellant himself had a federal
conviction initially thought to have been a felony. Defense counsel learned that the
conviction was a misdemeanor and informed the State. The State then moved to rejoin
appellant and co-defendant Jonathan Salazar, which the court granted. Appellant reurged
his motion to sever and was denied. Because of a disagreement as to whether article
36.09 of the Texas Code of Criminal Procedure applied to misdemeanors, the State agreed
not to offer appellant's prior misdemeanor conviction in the trial. No evidence was
presented at trial concerning the prior misdemeanor conviction of appellant.

 Severance is not a matter of right, but lies within the sound discretion of the trial
court unless a joint trial would prejudice a co-defendant as a matter of law. Garza v. State,
622 S.W.2d 85, 91 (Tex. Crim. App. 1981); Smith v. State, 998 S.W.2d 683, 686 (Tex.
App.-Corpus Christi 1999, pet. ref'd). An appellant who challenges the denial of a motion
for severance must satisfy the heavy burden of showing clear prejudice. King v. State, 17
S.W.3d 7, 16 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd); Silva v. State, 933 S.W.2d
715, 719 (Tex. App.-San Antonio 1996, no pet.).

 A showing of clear prejudice based on an allegation that the co-defendants'
defenses are inconsistent is apparently established if the co-defendants' respective
positions are mutually exclusive to the extent that "the jury in order to believe the core of
one defense must necessarily disbelieve the core of the other." Aguilar v. State, 39 S.W.3d
700, 702 (Tex. App.-Corpus Christi 2001, pet ref'd.). Article 36.09 of the code of criminal
procedure provides, in relevant part:

 Two or more defendants who are jointly or separately indicted or complained
against for the same offense or any offense growing out of the same
transaction may be, in the discretion of the court, tried jointly or separately
as to one or more defendants; provided that in any event either defendant
may testify for the other or on behalf of the state; and provided further, that
in cases in which, upon timely motion to sever, and evidence introduced
thereon, it is made known to the court that there is a previous admissible
conviction against one defendant or that a joint trial would be prejudicial to
any defendant, the court shall order a severance as to the defendant whose
joint trial would prejudice the other defendant or defendants.


Tex. Code Crim. Proc. art. 36.09 (Vernon 2005).

 This code provision is discussed in Qualley, where the court reiterates that where
evidence shows that there is a previous admissible conviction against one defendant, or
that a joint trial would be prejudicial to any defendant, the court shall order a severance as
to the defendant whose joint trial would prejudice the other defendant or defendants. 
Qualley v. State, 206 S.W.3d 624, 637 (Tex. Crim. App. 2006). The "previous admissible
conviction" portion of the statute acts only to shield a defendant from the introduction of the
co-defendant's conviction. Id. The concept is that a defendant without a conviction may
suffer "guilt by association" from the jury's exposure to the co-defendant's previous crime.
Id. A severance on this basis is mandatory only when the moving defendant himself has
no prior conviction that would be admissible at either the guilt or punishment stage of trial.
Id. Even when the requisite circumstances are present, failure to grant a severance on this
basis is harmless if the co-defendant's previous conviction was not in fact admitted at trial
as was the case here. Id. Thus, appellant was not entitled to a severance on the stated
basis of a previous admissible conviction because the prejudice, if any, would be to his co-defendant, not to himself. See id.

 Appellant also complains that during the trial, evidence was introduced that co-defendant Salazar committed the offense of deadly conduct. First, there was no showing
that Salazar was convicted. Thus, the mandatory language of article 36.09 has no
application. Tex. Code Crim. Proc. art. 36.09. Appellant also argues that the admission
of a drive-by shooting by Salazar constitutes prejudice to himself because he was shown
to be connected to the same or similar acts. He further argues that evidence that Salazar
had a motive to commit murder, when there was no such evidence presented against
appellant, preventing him from having a fair trial. No such objections concerning motive
or connection to appellant were made to the trial court and are thus waived. Tex. R. App.
P. 33.1(a)(1). The only material objection was a reiteration of prior objections based upon
the premise of a conviction by a co-defendant.

 To establish prejudice, the defendant must show a serious risk that a specific trial
right would be compromised by a joint trial, or that a joint trial would prevent the jury from
making a reliable judgment about guilt or innocence, and that the problem could not be
adequately addressed by lesser curative measures, such as a limiting instruction. Qualley,
206 S.W.3d at 636. The witness Chris Adams was called by the State and identified
appellant, Salazar, and other members of the Raza Unida gang. He explained that one
of the principal activities of the gang was selling drugs. He further described how the
gangs divided territories and the HPL murder of Canchola. He testified that several gang
members met at his house to discuss what to do about the murder of the boy. The gang
decided to do acts of violence for retribution against HPL. When asked what overt acts
that Adams did, he responded that one time he drove "while HPL shot." (2) Another time he
was a passenger with Olesky and Salazar, and Salazar shot. The witness went on to
describe his actions of retaliation against HPL. These particular acts were not attributed
to appellant. It is difficult to conceive how any trial involving gang conduct would not
necessarily mention some gang conduct that may not directly include one certain gang
members on one particular occasion. Here, the record does not demonstrate that some
specific trial right was compromised or that the jury was prevented from making a reliable
judgment. While curative instructions, if needed, were available to appellant, none were
requested. We overrule this issue.

 4. Voir Dire: Commitment

 In his third issue, appellant argues that the trial court erroneously overruled his
objection to the improper use of a "commitment question." The question asked:

 So, do you think a gang would have like a list or rules or a constitution? 
Maybe they have to vote on things and have membership and leadership
and those kinds of things? Is that what you would expect out of organized -
-


In context, it was the prospective juror who first stated that one of the obligations of a gang
member was loyalty. The juror also introduced the idea of a constitution. "Those guys in
a gang have a Constitution that they're dying for. It's an ideal they're following." The State
then followed up with the objected to question quoted above.

 Appellant cites Standefer for the proposition that certain commitment questions,
often requiring a "yes" or "no" answer, are improper. See Standefer v. State, 59 S.W.3d
177, 179 (Tex. Crim. App. 2001). An attorney cannot attempt to bind or commit a
prospective juror to a verdict based on a hypothetical set of facts. Id. Commitment
questions are those that commit a prospective juror to resolve, or to refrain from resolving,
an issue a certain way after learning a particular fact. Id. "The inquiry for improper
commitment questions has two steps: (1) Is the question a commitment question, and (2)
Does the question include facts--and only those facts-- that lead to a valid challenge for
cause?" Id. If the answer to (1) is "yes" and the answer to (2) is "no," then the question
is an improper commitment question, and the trial court should not allow the question. Id. 

 The trial court has broad discretion over the process of selecting a jury. Barajas v.
State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Therefore, we should not disturb a trial
court's ruling on the propriety of a particular question during voir dire absent an abuse of
discretion. Id. Questions, for example, regarding a juror's attitude about "tort reform" or
"the lawsuit crisis" are not commitment questions because they do not ask for a
commitment to resolve or refrain from resolving an issue in the case a certain way after
learning a particular fact. Standefer, 59 S.W.3d at 183 (citing Babcock v. Northwest
Memorial Hospital, 767 S.W.2d 705, 706 (Tex. 1989)). Here, the record shows that the
State was asking a series of questions attempting to discover prospective jurors attitudes
towards gangs and how they operated. There was no attempt to commit this juror because
he had already stated he thought that gangs had constitutions (or rules). The questioning
was simply an amplification of the juror's view. Accordingly, we hold that the question, in
this context, does not meet the first prong of Slandefer. Id. at 177. Therefore, the trial
court did not abuse its discretion.

 Even if we assume error, the record does not show any harm. Tex. R. App. P. 44.2
(b). The question was not answered, rewarding appellant by stopping this line of
questioning. The record does not disclose whether the prospective juror was chosen. The
error, if any, was not emphasized, and there is no evidence it was given any weight. See
Wilson v. State, 939 S.W.2d 57, 61 (Tex. Crim. App. 1996). We overrule this issue.

 5. Relevancy of Evidence

 Next, appellant challenges the relevancy of photos of gang members, the location
of a rival gang member's home, photographic evidence of gang tattoos of a rival gang and
evidence of a murder committed by the rival gang. He also claims prejudice. Appellant
cites Montgomery v. State, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) ("Relevancy is
defined to be that which conduces to the proof of a pertinent hypothesis--a pertinent
hypothesis being one which, if sustained would logically influence the issue. Hence it is
relevant to put in evidence any circumstance which tends to make the proposition at issue
more or less probable.") (citing Waldrop v. State, 133 S.W.2d 969 (Tex. Crim. App. 1940). 
He next cites Medina v. State, 7 S.W.3d 633, 644 (Tex. Crim. App. 1999). In Medina, the
State's theory of the offense was that appellant opened fire into a group gathered in front
of a home in revenge for the murder of a fellow gang member. Id. Witnesses testified that
at the time of the offense the H-town Crips and La Raza were at odds. Id. Thus, in
context, the testimony was most relevant as to appellant's motive and intent on the night
of the offense. Id. Similarly, appellant cites Pondexter v. State, 942 S.W.2d 577, 584
(Tex. Crim. App. 1996) (same transaction contextual evidence is admissible under rule
404(b) "only to the extent that it is necessary to the jury's understanding of the offense." 
Such evidence is admissible only "when the offense would make little or no sense without
also bringing in the same transaction evidence." Id. 

 We review the trial court's admission or exclusion of evidence by an abuse of
discretion standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). 
The trial court's decision will be reversed only if it was "outside the zone of reasonable
disagreement." Narvaiz v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992);
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g). Rule
403 provides that, "although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of
cumulative evidence." Tex. R. Evid. 403. 

 The State was required to prove that appellant acted with intent to establish,
maintain, or participate in a combination or in profits of a combination or as a member of
a criminal street gang. Tex. Penal Code Ann. § 71.02(a) (Engaging in Organized Criminal
Activity). Section 71.02(a)(1) enumerates murder and kidnapping as two of the crimes
listed as offenses thereunder. See id. The murder of the Canchola child was part of the
motivation for retribution by appellant and the Raza Unida gang. Meetings to discuss the
revenge helped to prove the motive and provided evidence of appellant's membership in
the gang and participation in the retribution crime. The ability of appellant's gang to
conduct their drug trafficking would have been adversely affected by the HLP intrusion into
their territory. Photos of the various gang members help to prove the combination and
motivation for the murder. The trial court could reasonably have concluded the evidence
to be both relevant, necessary to the jury's understanding of the offense, and not unduly
prejudicial. Thus, the admission of this evidence was not an abuse of desertion. We
overrule this issue.

 6. Speculative Testimony

 Next, appellant asserts the trial court erred by admitting speculative testimony of
Chris Adams. Adams was asked whether it appeared that the victim Rodriguez could have
gotten up and left freely and voluntarily prior to the murder. The State presumably sought
to prove up the kidnapping element of the offense. Appellant objected on the basis of
evidence rule 602. Tex. R. Evid. 602. Appellant contends Adams lacked sufficient
personal knowledge to testify to this "fact."

 Adams testified that Rodriguez could not leave. Adams previously testified that
Rosales and Salazar were in the car, seated on either side of Rodriguez in the back seat. 
Both were armed. Further, Olesky was quoted as stating: "We've got one of them ho'e's
and we're going to kill him." Adams saw Salazar and Rosales nod, confirming Olesky's
statement. Later that evening, appellant returned with Olesky, Rosales, Salazar and the
victim. The captors were standing around the car armed with pistols, while Rodriguez
remained in the middle rear seat. Adams had already testified that it was his impression
Rodriguez would not make it home alive. Then followed the objection to the question
whether it appeared to Adams that Rodriguez could have gotten up and walked away.

 We review the trial court's admission or exclusion of evidence by an abuse of
discretion standard. Weatherred, 15 S.W.3d at 542. Rule 602 provides in relevant part: 
"A witness may not testify to a matter unless evidence is introduced sufficient to support
a finding that the witness has personal knowledge of the matter. Evidence to prove
personal knowledge may, but need not, consist of the testimony of the witness." TEX. R.
EVID. 602; see also Wright v. State, 178 S.W.3d 905, 918 (Tex. App.- Houston [14th Dist.]
2005, pet. denied). Adams was qualified to testify that Rodriguez could not leave because
he had personal knowledge of a number of key facts, and he was present at material
times. Id. Furthermore, a witness's testimony can include opinions, beliefs, or inferences
as long as they are drawn from his or her own experiences or observations. Osbourn v.
State, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). This also incorporates the personal
knowledge requirement of rule 602 requiring that a witness may not testify to a matter
unless he or she has personal knowledge of the matter. Id. (citing Bigby v. State, 892
S.W.2d 864, 889 (Tex. Crim. App.1994)). Accordingly, the trial court did not abuse its
discretion by allowing the testimony. We overrule this issue.

 7. Leading Questions

 Appellant argues the State improperly used leading questions of Adams and
Rosales. Specifically, Adams was asked whether there was an ongoing criminal operation
to sell drugs on Brazos Street. Rosales was asked if he, appellant, and others took
Rodriguez somewhere on Fox Road against his will and killed him. The objection to
"leading" was overruled. The State asked the witness to point to Salazar and to confirm
that was he. Here appellant's objection of leading was sustained. After Rosales indicated
that he was handed a gun, the State asked if that was the .22 that was in his pocket. 
Again, appellant's objection to leading was sustained. Later, the State asked if the group
said anything about "hard luck," referring to Rodriguez. Again, appellant's objection was
sustained. Finally, the State asked if any comments were made by appellant or Salazar
about Rodriguez being in the wrong place at the wrong time. Counsel for both defendants
objected and the trial court once again sustained the objections. Only one of the
complained of objections to a leading question accompanied by proper record cites was
overruled. Thus, clearly there was no abuse of discretion by the trial court to four of the
five Rosales-leading-question complaints on appeal. Weatherred, 15 S.W.3d at 542 (trial
court's admission or exclusion of evidence by an abuse of discretion standard).

 A leading question suggests an answer; if a question does not suggest an answer
it is not leading. See Tex. R. Evid. 611; Bellew v. State, 452 S.W.2d 460, 461 (Tex. Crim.
App. 1970). What answer was the State suggesting to the witness Rosales, that he did kill
Rodriguez or that he did not? Essentially, the State was asking "Did you do it?" We do not
find the question to be leading. Even if it were, it did not affect a substantial right of
appellant and was thus harmless. Tex. R. App. P. 44.2(b). (3)

 Regarding the questioning of Adams, (whether there was an ongoing criminal
operation to sell drugs), appellant provides no proper citation to the voluminous record. 
Accordingly, the error, if any, is waived. Tex. R. App. P. 38.1(h); see Tufele v. State, 130
S.W.3d 267, 271 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (appellant has a duty to
cite specific legal authority and to provide legal argument based upon that authority).

 Even if we were to assume error regarding either the Adams or Rosales question,
rule 44.2(b) mandates that we disregard any non-constitutional error unless it affects
appellant's substantial rights. Tex. R. App. P. 44.2(b). An error in the admission or
exclusion of evidence is subject to the harm analysis set forth in rule 44.2(b). Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Dorado v. State, 843 S.W.2d 37, 38
(Tex. Crim. App. 1992)). A substantial right is affected when the error has a substantial
and injurious effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776
(1946)). If other properly admitted evidence proves the same facts, the error is harmless.
See Matz v. State, 21 S.W.3d 911, 912 (Tex. Crim. App. 2000); Brooks v. State, 990
S.W.2d 278, 287 (Tex. Crim. App. 1999). Additionally, "we should not reverse a conviction
for the erroneous admission of evidence if the appellate court, after examining the record
as a whole, has fair assurance that the error did not influence the jury, or had but a slight
effect." Cobb v. State, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002) (quoting Johnson, 967
S.W.2d at 417). The record is replete with other references to sales of drugs by both Raza
Unida and HPL. Our review of the record shows that the single question to Adams and
Rosales and their answers had little effect or influence in determining the jury's verdict. 
We overrule this issue.

 8. Hearsay Evidence

 In his seventh and eighth issues, appellant complains the State presented hearsay
evidence on a number of occasions. Olesky was quoted as saying "we've got one of
those ho'e's cousins in the car and we're fixing to kill him." No objection was offered by
trial counsel. This sub-issue was waived. Tex. R. App. P. 33.1(a)(1)(A).

 Appellant complains of statements made by appellant, Olesky, and Salazar as 
related by Adams: "that dam- your primo just started shooting. It just started going off." 
Again no objection was offered by trial counsel, possibly because he did not want to draw
attention to, or draw out, the death scene where Olesky told Rodriguez to say his prayers;
Rodriguez made the sign of the cross. This sub-issue is waived. Id. 

 Appellant also complains about Adams' testimony relating appellant's "talking about
it and how, once he hit the ground, they started shooting him. . . ." Similarly, Adams
testified, "Once he hit the ground everybody started firing." Then, Adams recounted that
they said his head kind of went back and he fell to the ground. Adams further stated his
"ex-sister" (a "crack friend") was threatened by Olesky that if she said anything, she would
be killed. Appellant points to no objections to any of the above testimony, made to the trial
court, prior to their admission. (4) Nor does our review reveal timely objections. These sub-issues were waived. Id.; Tex. R. Evid. 103(a)(1).

 Appellant next complains that the witness Deases was allowed to testify to a remark
by Olesky about "Some guy he called a 'Mobster.'" No timely objection was made to the
trial court. The sub-issue is waived. Tex. R. App. P. 33.1(a)(1)(A).

 Appellant also complains that the witness Rosales was allowed to testify regarding
alleged gang membership by the victim Rodriguez. Trial counsel timely objected to the
hearsay within hearsay. The State's attorney responded that the matter was not offered
for the truth of the matter stated. Much other testimony indicated Rodriguez was not a
gang member. Assuming error, we cannot discern how any substantial right of the
appellant was abused. Tex. R. App. P. 44.2(b). We find that the error, if any, did not have
a substantial and injurious effect or influence in determining the jury's verdict. King, 953
S.W.2d at 271.

 In a related issue, appellant complains the trial court erred by allowing Jody Deases
to testify that Olesky said there was a "Pistolero" that wanted to kill him. Olesky was also
quoted as telling Deases that they should say nothing or else he, Olesky, would "take care
of them." According to appellant, the trial court allowed this statement as a statement
against interest under rule 803 (24). Tex. R. Evid. 803 (24). As we discuss below, these
statements are not hearsay. 

 Most of the statements above and specifically including the Deases testimony, were
admissible as non-hearsay, according to the hearsay rule. Tex R. Evid. 801(e)(2)(E)
(statement by a co-conspirator of a party during the course and furtherance of the
conspiracy is not hearsay). When two or more people take part in the commission of a
felony, evidence of a conspiracy is admissible even though the substantive crime of
conspiracy is not charged. Meador v. State, 812 S.W.2d 330, 332 (Tex. Crim. App. 1991).
A conspiracy exists where two or more persons, as shown by words or deed, agree to do
an unlawful act. Butler v. State, 758 S.W.2d 856, 860 (Tex. App.--Houston [14th Dist.]
1988, no pet.). Statements that are made in furtherance of a conspiracy include those
made (1) with intent to induce another to deal with co-conspirators or in any other way to
cooperate with or assist co-conspirators. Crum v. State, 946 S.W.2d 349, 363 (Tex. App.--Houston [14th Dist.] 1997, pet ref'd.)

 The State also argues, and we agree, that it makes no difference at what time any
one such as appellant entered into the conspiracy. Viera v. State, 156 Tex. Crim. 631, 634
(Tex. Crim. App. 1951). "Every one who does enter into a common purpose or design is
generally deemed in law a party to every act which has before been done by the others,
and to every act which may afterwards be done by any of the others, in furtherance of such
common design." Id. (quoting 1 Greenleaf on Evidence). We overrule these issues.

 9. Extraneous Acts

 Appellant next argues that the testimony by Rodriguez's sister that her house had
been shot after the murder was admitted without proper notice under evidence rule 404b. 
Tex. R. Evid. 404(b). Appellant contends he timely requested notification of the State's
intent to introduce evidence of other crimes, wrongs or acts unless arising from the same
transaction. The drive by shooting was by Olesky. He was accompanied by Rosales,
DeLeon and Salazar. Counsel for appellant established on cross-examination who was
arrested. Appellant was not arrested in the white car involved in the drive-by shooting. 
Rule 404(b) refers to evidence of other crimes being inadmissable to prove the character
of a person in order to show action in conformity therewith. Id. Rule 404(a) states
evidence of a person's character is not admissible to prove action in conformity therewith,
with certain exceptions. Tex .R. Evid. 404(a). Here the State provided the required notice
to Salazar. And, it was Salazar, Rosales, DeLeon and Olesky that were involved in these
"other crimes," not appellant. On the other hand, it could be argued that this evidence
shows an organized crime combination in furtherance of the conspiracy to murder
Rodriguez, which then would apply to appellant.

 Same transaction contextual evidence may be admissible where "several crimes are
intermixed, or blended with one another, or connected so that they form an indivisible
criminal transaction, and full proof by testimony. . . of any one of them cannot be given
without showing the others." Rogers v. State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993).
It has also been held that "it has long been the rule in this State that the jury is entitled to
know all relevant surrounding facts and circumstances of the charged offense; an offense
is not tried in a vacuum." Moreno v. State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986).

 The appellant suggests that the State's open file policy is not sufficient notice. In
Hayden, the court of criminal appeals noted that in some situations an open file policy is
not sufficient to comply with the rule. Hayden v. State, 66 S.W.3d 269, 271 (Tex. Crim.
App. 2001). On the other hand, because the purpose of rule 404(b) notice is to prevent
surprise, the delivery to the defense of witness statements detailing extraneous offenses
may, in an appropriate case, satisfy the notice requirements of rule 404(b). Id. at 272. The
rule requires "reasonable" notice. Id. Whether the delivery of witness statements
constitutes reasonable notice depends in part on the timing of that delivery. Id. Neither
party addresses Hayden and its ramifications.

 The State points out that it notified appellant in response to his request and its
notice begins: "Member of the prison gang Raza Unida- history [sic] of assaults, homicides,
drug trafficking, intimidation, and other gang related criminal activities." It lists Sgt. John
Garza, VCSO, as this source. However, the record does not include a statement by Garza. 
The State also argues that appellant had to know that he was indicted for an organized
crime offense and thus had to know this evidence would be offered.

 Finally, the State contends that the evidence of the subsequent drive-by shooting
and arrest of Olesky was "same transaction" evidence and a necessary part of its proof. 
This is true because Olesky was arrested with a .38 caliber pistol, which was tied to the
murder of Rodriguez. Projectiles matching the Olesky pistol were found in the body of
Rodriguez. Thus, the evidence added to the proof of the organized crime combination, and
also corroborated the accomplice witness testimony of Rosales. We agree. Here, several
crimes were intermixed, or connected so that they formed an indivisible criminal
transaction. See Rogers, 853 S.W.2d at 33. The drive-by was attempted intimidation of
a potential witness and the arrest led to the discovery of one of the weapons used in the
murder. Thus, the full proof by testimony of the organized crime combination could not be
given without showing this transaction. Id. Rule 404(b) excludes same transaction
evidence from its notice requirements in criminal cases. Tex. R. Evid. 404(b). We
overrule this issue.

 10. Evidentiary Sufficiency

 In his last issue, appellant contends the evidence is legally and factually insufficient
to prove the elements of capital murder beyond a reasonable doubt. Specifically, he
complains the State did not prove that the murder occurred in an attempt to commit, or
during the commission of, kidnapping. Nor did the State prove, according to appellant, that
he was a member of the combination at the time of the offense and that he either directly
committed or assisted in the murder of the victim.

 In reviewing legal sufficiency, the courts look at all of the evidence in the light most
favorable to the prosecution to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Vasquez v. State,
67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Legally sufficient evidence supporting a
conviction exists if the court, after reviewing the evidence in the light most favorable to the
prosecution, determines that a rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19
(1979).

 In determining the factual sufficiency of the elements of an offense, the reviewing

court "'views all the evidence . . . in a neutral light, and sets aside the verdict only if it is

so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.'" 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996)). The court reviews the evidence weighed by the
jury that tends to prove the existence of the elemental fact in dispute and compares it with
the evidence that tends to disprove that fact. Id. We are authorized to disagree with the
fact finder's determination. Id. (citing Clewis, 922 S.W.2d at 133). This review, however,
must employ appropriate deference to prevent an appellate court from substituting its
judgment for that of the fact finder, and any evaluation should not substantially intrude
upon the fact finder's role as the sole judge of the weight and credibility given to witness
testimony. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The complete
and correct standard a reviewing court must follow to conduct a Clewis factual sufficiency
review of the elements of a criminal offense, asks whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson, 23
S.W.3d at 11.

 "A person commits the offense of kidnapping when he knowingly or intentionally
abducts another person." Tex. Penal Code Ann. § 20.03(a) (Vernon 2005). "Abduct"
means "to restrain a person with intent to prevent his liberation by: (A) secreting or holding
him in a place where he is not likely to be found; or (B) using or threatening to use deadly
force." Id. § 20.01(2)(5). Because the verdict was supported in part by the accomplice
testimony of Rosales, we must also determine whether other non-accomplice evidence
tends to connect appellant with the offense. See McDuff v. State, 939 S.W.2d 607, 612
(Tex. Crim. App. 1997) (citing Tex. Code Crim. Proc. art. 38.14).

 Most of the witnesses were not accomplices to the murder. This includes the
testimony of Hensley, Deases, Garcia, deputies, policemen, and Adams. While Adams
was found by the trial court to be an accomplice in fact, the jury was charged to determine
his status. Even without the testimony of Adams or Rosales, the evidence favoring the
conviction was considerable and corroborative.

 The evidence showed that Raza Unida gang members Salazar, Rosales, Olesky,
Shorty, and appellant met at Hensley's home shortly after the Canchola boy's killing. Guns
were present. Appellant was seen with a weapon on the day of the murder. Olesky was
arrested with a pistol used to shoot Rodriguez. Deases pleaded with Olesky not to kill
Rodriguez, who responded "what's got to be done's got to be done." Deases testified that
Rodriguez was a cousin of one of the HPL members, and they were going to kill him. 
Hensley was threatened by a gang member that she would be killed if she spoke of the
Raza Unida meetings. Garcia testified that Rodriguez was picked up by Olesky, Salazar,
and Rosales. Several deputies and officers testified that appellant and the others were
members of Raza Unida.

 Adams was not a gang member. Several witnesses placed Rodriguez in the rear
middle seat of the automobile. Weapons were present. Salazar and Rosales at one point
were standing outside on either side of the car with weapons visible. When Olesky said
they were going to kill Rodriguez, Salazar and Rosales acknowledged their mutual intent. 
Adams saw appellant in the vehicle with Rodriguez shortly before the killing and testified
that appellant sat next to Rodriguez with a pistol. Olesky, Salazar, Rosales, and appellant
returned to the house and asked for some marijuana. Olesky wanted to get Rodriguez
high before killing him. Some time later, the four returned without Rodriguez. Appellant
and Salazar talked about all of them shooting the victim and leaving him twitching out on
Fox Road. The clothing of the four was collected along with the weapons and put in a
black trash bag, which was placed in the back of Olesky's vehicle.

 The body of Rodriguez was found by law enforcement riddled by pistol fire. Thus,
sufficient evidence corroborated the eyewitness testimony of the accomplice Rosales. 
Rosales in turn testified. He verified much of the other evidence and indicated the group
took Rodriguez out of the car near Fox Road. He reconfirmed appellant's membership in
Raza Unida. Olesky fired the first shot with a .38 pistol. Before he was shot, Rodriguez
told Olesky to "go to hell." Then Olesky shot him in the head. Rodriguez stood shaking
for a couple of seconds, then appellant and Salazar shot Rodriguez. The group shot him
12 or 13 times, some emptying their weapons into Rodriguez. Then Rosales also fired
one shot.

 Appellant argues that a rational trier of fact could not have found the elements of
kidnapping beyond a reasonable doubt. He further argues the State failed to prove that
restraint of Rodriguez was completed and lack of specific intent to prevent liberation by
secretion or deadly force. He cites Mason v. State, 905 S.W.2d 570, 575 (Tex. Crim. App.
1995). Mason holds that a kidnapping becomes a completed offense when a restraint is
accomplished, and there is evidence that the actor intended to prevent liberation and that
he intended to do so by either secretion or the use or threatened use of deadly force. Id.
Thus, the State had the burden to prove that a restraint was completed and that appellant
evidenced a specific intent to prevent liberation by either secretion or deadly force. Id. 

 As we discussed above, Adams testified that Rodriguez could not leave. Adams
previously testified that Rosales and Salazar were at the car, seated on either side of
Rodriguez in the back seat. Both were armed, and Olesky stated "we're going to kill him." 
Adams saw Salazar and Rosales nod, confirming Olesky's statement. Later that evening,
the captors were standing around the car armed with pistols, while Rodriguez remained in
the middle rear seat. Adams had already testified that it was his impression Rodriguez
would not make it home alive. 

 The State argues that there is nothing in the Texas statute that even suggests that
it is necessary for the State to prove that a defendant moved his victim a certain distance,
or that he held him a specific length of time before he can be found guilty of kidnapping
citing, Hines v. State, 75 S.W.3d 444, 447-48 (Tex. Crim. App. 2002). Hines also holds
that under the kidnapping statute, there is no specific time requirement for determining
whether a restraint has taken place. Id. (citing Santellan v. State, 939 S.W.2d 155, 163
(Tex. Crim. App. 1997); Earhart v. State, 823 S.W.2d 607, 618 (Tex. Crim. App. 1991),
remanded on other grounds, 509 U.S. 917 (1993); Rogers v. State, 687 S.W.2d 337, 342
(Tex. Crim. App. 1985); Sanders v. State, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980)).

 The term "abduct" means to restrain a person with intent to prevent his liberation by
secreting or holding him in a place where he is not likely to be found. Tex. Penal Code
Ann. § 20.01(2)(A). This definition does not require that the victim be held for any certain
length of time. Sanders, 605 S.W.2d at 614. In this case, there is ample evidence to show
that for some time the appellant and fellow gang members intentionally and knowingly
restrained the victim with the intent to prevent his liberation by secreting and holding him
in a place where he was not likely to be found. See id. The jury could reasonably conclude
that the victim was in fact held in an automobile being driven around by armed assassins,
then secreted to a deserted country road, and was not found until hours after his murder.
Thus, there is legally sufficient evidence to support the findings of kidnapping and murder.

 Appellant argues that while Adams indicated that Rodriguez was held by gang
members with weapons, he also told an investigator Rodriguez was not kidnapped. At one
point, Rosales testified Rodriguez was not being held in the car at gun point, at least not
until they arrived at Fox Road. There was equivocal testimony about Rodriguez's entry into
the car. However, earlier testimony indicated that it was gang members that "spotted"
Rodriguez walking from an HPL house before they picked him up. Many questions were
aimed at showing that "at that point" there was no weapon aimed at Rodriguez. Yet
ultimately, all guns were aimed at Rodriguez and fired. Other evidence showed the group
drove Rodriguez around and even bought cokes and chips. Finally, appellant hypothesizes
that the murder occurred as a spur-of-the-moment impulse killing.

 Intent to prevent liberation by secretion or deadly force can be inferred from an
accused's conduct, remarks, and the surrounding circumstances. Turner v. State, 600
S.W.2d 927, 929 (Tex. Crim. App. 1980); Murchison v. State, 93 S.W.3d 239, 254 (Tex.
App.- Houston [14th Dist.] 2002, pet. ref'd). We note that gang-member Olesky expressed
the intent to kill an innocent like the Canchola baby. The Raza Unida gang was angry over
the Canchola murder and sought revenge. They also expressed a need to protect their
drug trafficking turf. Even if Rodriguez initially voluntarily entered the gang member's car,
he was driven around for hours then taken to a remote rural location. His "hosts" were all
armed, and intent upon killing Rodriguez, who remained seated between two gang
members. The penal code does not require that the victim be held for any certain length
of time. Tex. Penal Code Ann. § 20.01(2)(A); Sanders, 605 S.W.2d at 614. At least during
his final hour of his life, Rodriguez was taken from his neighborhood, surrounded by gang
members, driven to a remote location, shot multiple times, and left for dead. Even had
Rodriguez's initial entry into the vehicle been voluntary, his last ride to the countryside
where he was murdered was not voluntary. Thus, the necessary intent to prevent liberation
is established. Viewing all of the evidence in a neutral light, we cannot say that the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or the verdict
is against the great weight and preponderance of the evidence. Johnson, 23 S.W.3d at
10-11. We have also carefully reviewed the most important evidence that appellant claims
undermines the verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). That
evidence does not demonstrate that the proof of guilt is so obviously weak as to undermine
our confidence in the jury's determination. Johnson, 23 S.W.3d at 11. 

 Finally, appellant submits there was insufficient evidence demonstrating that he was
a member of a combination or criminal gang before and during the offense. He admits
there was evidence he had the gang tattoo, but insists he was not a major player in the
gang activities such as drive-by shootings and drug dealing. Deputies Smejcal and Garza,
as well as Officer Garcia, testified appellant was a member of Raza Unida. Other
witnesses also identified appellant as a member of the gang. He was present at one of the
homes when material gang activities were discussed. Before the murder, appellant was
seen armed outside the vehicle that took Rodriguez to the scene of his death. Appellant
was present when the gang went to the house to get marijuana, shortly before the murder. 
Appellant was present at the murder and fired shots into Rodriguez. He admitted shooting
Rodriguez after the murder. Thus, the evidence does not demonstrate that the proof of
guilt is so obviously weak as to undermine our confidence in the jury's determination,. Id. 
 We overrule this issue.

11. Conclusion

 The judgment and sentence of the trial court are affirmed. 



 

 DON WITTIG,

 Justice



 

Do not publish. Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 2nd day of April, 2009.


 

 
1. Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice
of the Supreme Court of Texas pursuant to the government code. Tex. Gov't code ann. § 74.003 (Vernon
2005).
2. This is an apparent misstatement by either the witness or the court reporter. It is not likely the an
HPL member was in a Raza Unida vehicle, much less shooting at one of his own gang members.
3. See our harmless error discussion below.
4. Appellant cites to R.R. vol 11 73:9. This was after the admission of the above statements. The trial
court discussed one rendition of the statement by Olesky after the murder, in the mobile home with the named
defendants not present (waiting outside in the car). The trial judge then summarized the co-conspirator rule
and ruled this Olesky statement admissible. If appellant is suggesting this later ruling applied to the earlier
Adams statement that his ex sister would be killed if she said anything, then the objection was not timely. Tex.
R. Evid. 103)(a)(1). Tex. R. App. P. 38.1(g).